## Trout, et al. v. Blackburn, et al.

(Decided April 27, 1917.)

### Appeal from Pike Circuit Court.

1. Homestead—Antecedent Debts—Right to Acquire.—Where, both at the time the debt is created and the alleged homestead is acquired, the statute provides for a homestead of the value of $1,000.00, which shall be exempt against all debts or liabilities

created or incurred after June 1, 1866, but further provides that the exemption shall not apply to sales under execution, attachment or judgment at the suit of creditors, where the debt or liability existed prior to the purchase of the land or the erection of improvements thereon, a debtor cannot acquire a homestead as against antecedent debts.

2. Homestead—Purchase of With Exempt Wages—Evidence.—Where the statute provides that wages to the amount of $50.00 shall be exempt, but this exemption shall not apply to debts contracted for food, raiment and house rent for the family, a debtor who buys land and pays for it by performing labor in removing the timber is not entitled to a homestead therein on the ground that it was paid for with exempt wages, as against antecedent debts contracted for food and raiment for his family.

3. Appeal and Error—Finding of Chancellor—Pleading—Evidence.—A finding of the chancellor which is not based on a pleading or supported by any evidence is erroneous.

J. S. CLINE and W. K. STEELE for appellants.

CHILDERS & CHILDERS for appellees.

OPINION OF THE COURT BY WILLIAM ROGERS CLAY, COMMISSIONER—Reversing.

Henry Varney and his wife, Lydia, were married in the year 1865 and had several children. About the year 1881, Floyd Williamson agreed to convey a certain tract of land on the Mullins Fork of Pond Creek in Pike county to Henry Varney and his brother, Alex, in consideration of their cutting certain timber thereon and delivering it at a designated point. The work of cutting and delivering the timber occupied three or four years, and at the end of that time a certain portion of the land was conveyed by Williamson to Henry Varney. Soon after contracting for the land, Henry Varney built a cabin on it and continued to occupy it with his wife and children. In the year 1887, he sold the coal and other minerals underlying the land for the sum of $234.00. In the year 1894, he sold one-half of the land to E. B. Williamson for $500.00. Henry Varney and his family continued to live on the remainder of the tract until the year 1902, when he died.

In the years 1874 and 1876, Henry Varney executed certain notes to Smith & Varney, a firm of merchants. The notes were assigned to Jacob Smith, a member of the firm. In the year 1889, Jacob Smith brought suit on the notes and recovered judgment in the year 1894. On

May 22, 1899, execution was issued and levied on the remainder of the tract owned by Henry Varney. The land was appraised at $650.00, and purchased on July 17, 1899, by Jacob Smith, the plaintiff in the execution, for $420.16, the amount of his debt. Not being redeemed within the time prescribed by law, the land was conveyed by the sheriff to the purchaser on May 15, 1902. Jacob Smith, by his will, dated May 24, 1906, and probated on June 18, 1906, devised the land to his son, Will M. Smith, who shortly thereafter sold it by title bond to Sarah A. Trout, a daughter of Henry Varney, for the sum of $485.00, but no deed of conveyance was executed until March 4, 1912. Soon after the purchase of the land by title bond, Sarah A. Trout and her husband moved on the land, erected valuable improvements thereon and continued to occupy same as their home.

In the year 1914, this suit was brought by Octavia Blackburn and others, children and grandchildren of Henry Varney, against Sarah A. Trout and husband and Will M. Smith and wife to recover 12/13 of the land in controversy, on the ground that it was exempt to Henry Varney as a homestead and the execution sale passed no title to the purchaser or to his successors in interest. The chancellor held that the land was exempt as a homestead, and that the purchase by Sarah A. Trout inured to the benefit of all the children of Henry Varney. He further held that plaintiffs were the owners of 12/13 of the land and defendant, Sarah A. Trout, was the owner of the remaining 1/13. After adjudging Sarah A. Trout a lien on the land for $92.30, being 12/13 of the difference between the value of the improvements which she placed on the land and the sum of the value of the timber which she removed and the rent with which she was charged, and a further lien for 12/13 of the purchase price which she paid for the land, he directed a sale of so much of the land as was necessary to pay said liens. From this judgment Sarah A. Trout and her husband appeal.

In support of the decision of the chancellor that the land in question was exempt as a homestead at the time of the execution sale, it is contended by appellees that the law in force at the time the debt was created controls, and that, under the law, Henry Varney was entitled to acquire a homestead exempt from all debts created after the first day of June, 1866. It is unnecessary in this

case to discuss the question whether the case is controlled by the law in force when the debt was contracted or when the homestead was acquired. Section 1 of the Act of 1866 (Myers' Supplement to Revised Statutes of Kentucky, pages 714 and 715) is as follows:

"That in addition to the personal property now exempt from execution, on all debts or liabilities created or incurred after the first day of June, one thousand eight hundred and sixty-six, there shall be exempt from sale under execution, attachment, or judgment of any court, except to foreclose a mortgage given by the owner of a homestead, or for purchase money due therefor, so much land, including the dwelling house and appurtenances owned by the debtor, as shall not exceed in value one thousand dollars." Section 6 of the same act is as follows:

"That this act shall apply only to white persons, who are actual *bona fide* housekeepers with a family, and shall not apply to sales under execution, attachment, or judgment at the suit of creditors, where the debt or liability existed prior to the purchase of the land or the erection of the improvements thereon."

With certain immaterial exceptions not necessary to be noticed, these two sections were in force when the debt was created and the land was acquired, and are still in force, though the two sections have been combined in one. Acts of 1871-1872; Acts of 1876; General Statutes 1877, chapter 38, sections 9 and 16; General Statutes 1888, sections 9 and 16; Kentucky Statutes 1915, section 1702. It will thus be seen that the exemption against debts created after June 1, 1866, does not apply to sales under execution, attachment, or judgment at the suit of creditors, if the debt or liability existed prior to the purchase of the land. That being true, Henry Varney could not, between the years 1881 and 1884, acquire a homestead as against the indebtedness which he owed to Jacob Smith. Mosely v. Bevins, 91 Ky. 260, 15 S. W. 527.

Nor is there any merit in the contention that the land was exempt because it was purchased with wages that were exempt. Whether or not the land which was finally conveyed to Henry Varney may be regarded as the equivalent of exempt wages, we deem it unnecessary to decide. Under the statute in force when the debt was created and the services were rendered by Henry Var-

ney, only the sum of $50.00 due for labor was exempt, and even this sum was not exempt if the debts were contracted for food, raiment or house rent for the family. General Statutes, chapter 38, article XIII, section 8. A careful consideration of the evidence on the question convinces us that the original debts were created for food and raiment for the family of Henry Varney and, that being true, he was not entitled to any exemption so far as wages were concerned.

The finding that the purchase by Mrs. Trout inured to the benefit of the other children of Henry Varney is not based on any pleading or supported by any evidence. On the contrary, the evidence leaves no doubt that the purchase was made by Mrs. Trout and her husband for their sole use and benefit.

It follows that the chancellor should have rendered judgment in favor of Sarah A. Trout and her husband.

Judgment reversed and cause remanded, with directions to enter judgment in conformity with this opinion.